UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN F. WARREN,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>CORIZON HEALTH; DR. APRIL DAWSON, M.D.; MICHAEL TAKAGI, PA-C; DIANE DICE, PA-C; STEVEN STEDTFELD, PA-C; DAVID FOSS, NP RYAN VALLEY, HSA; BRISTY DELAOE; JOHN DOE PROVIDER; JANE DOE PROVIDER; STEVEN LITTLE, WARDEN; BRENT REINKE, DIRECTOR OF IDAHO DEPT. OF CORRECTIONS;<br><br>　　　　　　　Defendants. | Case No. 1:14-cv-00011-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

　　　　Pending before the Court in this prisoner civil rights matter is Defendants' Motion to Dismiss and/or for Summary Judgment (Dkt. 15) and Plaintiff's Motion to Strike the Affidavit of Jan Pavelec (Dkt. 20). The motions are now fully briefed.

　　　　Having fully reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, the Court will decide this matter on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

**MEMORANDUM DECISION AND ORDER - 1**

## PLAINTIFF'S MOTION TO STRIKE

Plaintiff has pointed the Court to discrepancies between the grievances that Grievance Coordinator Jan Pavelec declared are logged into the electronic system, and those that Plaintiff has brought forward. Plaintiff asks the Court to strike Pavelec's entire Affidavit as a "false document" based on these discrepancies. (Dkt. 20.) Defendants assert that the discrepancies are a mistake, that they have withdrawn the portion of the pending Motion to Dismiss that was based on the mistake, and that the portions of the declaration relating to the remaining claims and grievances are unaffected by the mistakes.

It is clear that the system of receiving, routing, and logging in hundreds of prisoner grievances each month is not infallible, and that human errors are bound to occur from time to time. Without something more showing that the discrepancies were intentional and that they infect the entire subject matter of the Affidavit, Plaintiff's Motion to Strike the entire Affidavit has no adequate factual basis.

The Court concludes that, with Plaintiff's supplementation of the record and Defendants' admissions of Pavelec's mistakes, the content of the grievance documents are not in dispute. Further, as to the remaining claims at issue in the Motion to Dismiss, Plaintiff has *not* asserted that he submitted grievances about the knee treatment and the failure to supervise pharmacy personnel, which in turn caused him to go without prescription medication for 17 days, or that any grievances were lost or destroyed. Rather, he makes no effort to controvert Defendants' assertion that he did not exhaust his administrative remedies as to these claims. Therefore, the Court finds it unnecessary to

**MEMORANDUM DECISION AND ORDER - 2**

strike the affidavit or assume a dispute about Plaintiff's grievance history where no dispute exists. For these reasons, the Motion to Strike will be denied.

## MOTION FOR SUMMARY JUDGMENT

Defendants filed their motion regarding Plaintiff's failure to exhaust administrative remedies as a Motion to Dismiss under Rule 12(b), and alternatively as a Motion for Summary Judgment under Rule 56. The Court will treat the motion under Rule 56. Both parties have submitted extra-record documents supporting their positions.

Defendants originally requested dismissal of all of Plaintiff's claims, asserting that Plaintiff failed to exhaust any of the claims in his Complaint. After Plaintiff filed his response, pointing to grievance forms documenting exhaustion of some of the claims, Defendants withdrew a portion of their motion. (Dkt. 22.) The only claims remaining at issue in the present motion are Plaintiff's claims that Defendants Dawson, Dalaoe, and Valley failed to provide him with proper medical care for his knee and that Dr. April Dawson's actions in failing to supervise pharmacy personnel caused him to go without his prescribed medications for a 17-day period.

1. **Standard of Law**

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[1] prisoners are required to exhaust all available administrative remedies within the prison system before they can include the claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *Cano v. Taylor*, 739 F.3d 1214,

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

1220-21 (9th Cir. 2014) (a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204. Once in court, defendants have the right to bring motions addressing exhaustion of administrative remedies at the very beginning of litigation, and "disputed factual questions relevant to exhaustion[,] should be decided at that time. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc).

Failure to exhaust is an affirmative defense that may be asserted in a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim only if the prisoner's failure to exhaust is clear from the face of the complaint and any public records subject to judicial notice. *Albino*, 747 F.3d at 1166. When either party relies on evidence beyond the pleadings and public records, the exhaustion issue should be brought as, or converted into, a motion for summary judgment under Rule 56. *Id.* at 1170. "If the record is sufficiently developed to permit the trial court to consider summary judgment,

**MEMORANDUM DECISION AND ORDER - 4**

and if the court finds that when viewing the evidence in the light most favorable to a moving party the movant has not shown a genuine dispute of fact on the issue of exhaustion," the Court may enter summary judgment for either the moving or the nonmoving party (on the court's own motion). *Id*. at 1176; *see* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant.")

Rule 56 prohibits the courts from resolving genuine disputes as to material facts on summary judgment. If a genuine dispute exists as to material facts relating to an exhaustion defense, the motion should be denied, and the "disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1170-71. *See also McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 184 (1936) (stating that the court may "inquire into the facts as they really exist") (internal quotation marks omitted); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) (stating that the court may "hold[] an evidentiary hearing on the disputed facts"); *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (stating that the court "has the discretion to take evidence at a preliminary hearing in order to resolve any questions of credibility or fact" and that the plaintiff must establish the facts "by a preponderance of the evidence, just as he would have to do at trial") (internal quotation marks omitted). The issue of "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino*, 747 F.3d at 1170.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

Confusing or contradictory information given to a prisoner "informs [the] determination of whether relief was, as a practical matter, 'available.'" *Brown*, 422 F.3d at 937. Administrative remedies will be deemed unavailable and exhaustion excused if the inmate had no way of knowing the prison's grievance procedure, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," or if prison staff took any other similar actions that interfered with an inmate's efforts to exhaust. *Albino*, 747 F.3d at 1173.

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F.3d 1162.

**2.     Material Facts**

The facts material to the administrative exhaustion question are included within the sections below. The steps required to complete the IDOC Grievance Process, which

**MEMORANDUM DECISION AND ORDER - 6**

are published in the prison policy manual, are undisputed. If disputes exist as to facts concerning whether the exhaustion process was properly completed or whether Plaintiff has an excuse for failure to complete the process, the Court has so noted.

3.     **IDOC Grievance Process**

The IDOC's grievance process consists of three stages. First, any inmate with a concern is required to seek an informal resolution by filling out an offender concern form, addressed to the staff person "most capable of responding to and, if appropriate, resolving the issue." (Pavelec Aff., Dkt. 15-2, ¶¶ 3-5.) If the issue cannot be resolved informally through the use of a concern form, the inmate must then file a grievance form. (*Id*., ¶¶ 6.)

A grievance form must be submitted within 30 days of the incident giving rise to the grievance. (*Id*.) When submitting a grievance, the inmate must attach a copy of the offender concern form, showing the inmate's attempt to settle the issue informally. (*Id*.) Grievances must contain "specific information including the nature of the complaint, dates, places, and names," and must address only one issue of concern per grievance. (*Id*., ¶ 7.) When the grievance coordinator receives an inmate grievance, she enters the grievance information into the Corrections Integrated System, which is an electronic, searchable database used to track grievances. (*Id*., ¶¶ 7, 12.) After the grievance coordinator forwards the grievance to the appropriate prison or medical staff member, the staff member responds to the grievance and returns it to the grievance coordinator. The grievance coordinator then forwards the grievance to a "reviewing authority," usually a

deputy warden (or the health services administrator, if a medical claim is at issue). (*Id*., ¶¶ 7-8.) The written grievance response is then provided to the inmate.

If the decision on an inmate's grievance is not satisfactory to the inmate, the inmate may appeal that decision to the "appellate authority," who is typically the warden (or the regional manager or vice president of the IDOC's medical contractor, if a medical claim is at issue). (*Id*., ¶¶ 9-10.) The appellate authority may respond to the appeal, or may forward it to the director of the IDOC or another division administrator, if the subject matter of the grievance is beyond the appellate authority's control. (*Id*., ¶ 10.)

When the inmate has completed all three of these steps—concern form, grievance form, and grievance appeal—the administrative grievance process is exhausted. (*Id.,* ¶ 11.)

Sometimes an inmate's grievance is returned to him unprocessed. Beginning in November 2007, the grievance coordinator became responsible for logging all unprocessed grievances into the system, so that records of submissions and rejections were kept. Prior to that date, the receipt and return of unprocessed grievances were not tracked. (*Id*., ¶ 13.)

### 4. Plaintiff's Grievances

It is undisputed that Plaintiff exhausted two grievances: (1) No. SP130000224, regarding intestinal bleeding; and (2) No. SP130000232, regarding the over-prescribing of NSAID medications and intestinal bleeding. The only other grievance that Plaintiff alleges he exhausted is No. SP130000202, regarding the overprescribing of NSAID

medications, which seems to be the same topic as No. SP130000232. (Dkt. 18, p. 2.) The Motion to Dismiss has been withdrawn as to these claims.

**5.      Discussion**

Defendants continue to assert that Plaintiff has not pointed to any exhausted grievance regarding treatment for his knee or the failure to supervise pharmacy personnel that caused Plaintiff to go without his prescription medication for 17 days. Plaintiff has brought forward nothing to dispute this position. As a counter-defense, Plaintiff points to the merits of his claims; however, the Court cannot reach the merits of the claims without a showing of proper exhaustion of administrative remedies.

Accordingly, the Court concludes that there are no genuine disputes of material facts regarding exhaustion of the two remaining claims. Hence, Defendants are entitled to summary judgment on the issue of failure to exhaust the § 1983 claims regarding the lack of treatment for Plaintiff's knee and the failure to supervise pharmacy personnel that caused Plaintiff to go without his prescription medications for 17 days. These claims will be dismissed without prejudice.

**ORDER**

**IT IS ORDERED:**

1.      Defendants' Motion to Dismiss and/or Motion for Summary Judgment (Dkt. 15) is GRANTED as to the § 1983 claims regarding treatment for his knee and the failure to supervise pharmacy personnel that caused Plaintiff to go without his prescription medications for 17 days. These claims are dismissed without prejudice. The

motion (Dkt. 15) is DENIED, or deemed withdrawn, as to the § 1983 claims regarding over-prescribing of NSAID medications and intestinal bleeding.

2. Plaintiff's Motion to Strike Affidavit of Jan Pavelec (Dkt. 20) is DENIED.

3. The Clerk shall correct the record to show that Plaintiff's Application to Proceed in Forma Pauperis (Dkt. 1) was GRANTED by the Order at Docket No. 11.

**IT IS FURTHER ORDERED** that the parties shall adhere to the following pretrial schedule regarding the remaining claims of over-prescribing NSAID medications and intestinal bleeding:

**Disclosure of Relevant Information and Documents:** If the parties have not already done so, no later than **30 days** after entry of this Order, the parties shall provide each other with relevant information and documents pertaining to the claims and defenses in this case, including the names of individuals likely to have discoverable information, along with the subject of the information, as well as any relevant documents in their possession, in a redacted form if necessary for security or privilege purposes; and, if necessary, they shall provide a security/privilege log sufficiently describing any undisclosed relevant documents which are alleged to be subject to nondisclosure. Any party may request that the Court conduct an in camera review of withheld documents or information. In camera documents are to be filed ex parte under seal, and not provided by email or mail.

**Amendment of Complaint**. Any proposed amended complaints, with accompanying motions, must be filed no later than **90 days** after entry of this Order.

**Completion of Discovery and Requests for Subpoenas:** All discovery shall be completed no later than **120 days** after entry of this Order. Discovery requests must be made far enough in advance to allow *completion* of the discovery in accordance with the applicable federal rules *prior* to this discovery cut-off date. Discovery is exchanged between parties, not filed with the Court. The Court is not involved in discovery unless the parties are unable to work out their differences between themselves as to whether the discovery responses are appropriate. In addition, all requests for subpoenas duces tecum (pretrial production of documents by nonparties) must be made within **90 days** after entry of this Order. No requests for subpoenas duces tecum will be entertained after that date. (Subpoena requests for trial appearances of witnesses shall not be filed until the case is set for trial.) To obtain a subpoena duces tecum for production of documents by nonparties, Plaintiff must first submit to the Court the names, addresses, and the type of information sought from each person or entity to be subpoenaed, and Plaintiff must explain the relevance of the items requested to the claims. The Court will then determine whether the subpoenas should issue.

**Depositions**: Depositions, if any, shall be completed no later than **120 days after entry of this Order**. If Defendants wish to take the deposition of Plaintiff or other witnesses who are incarcerated, leave to do so is hereby granted. Any such depositions shall be preceded by **10 days'** written notice to all parties and deponents. The parties and counsel shall be professional and courteous to one another during the depositions. The court reporter, who is not a representative of Defendants, will be present to record all of the words spoken by Plaintiff (or other deponent), counsel, and any other persons at the

**MEMORANDUM DECISION AND ORDER - 11**

deposition. If Plaintiff (or another deponent) wishes to ensure that the court reporter did not make mistakes in transcribing the deposition into a written form, then Plaintiff can request the opportunity to read and sign the deposition, noting any discrepancies between what is transcribed and what Plaintiff believes was said. If Plaintiff wishes to take depositions, Plaintiff must file a motion requesting permission to do so, specifically showing the ability to comply with the applicable Federal Rules of Civil Procedure by providing the names of the proposed persons to be deposed, the name and address of the court reporter who will take the deposition, the estimated cost for the court reporter's time and the recording, and the source of funds for payment of the cost.

**Dispositive Motions:** All motions for summary judgment and other potentially dispositive motions shall be filed with accompanying briefs no later than **150 days after entry of this Order**. Responsive briefs to such motions shall be filed within **30 days** after service of motions. Reply briefs, if any, shall be filed within **14 days** after service of responses. All motions, responses, and replies shall conform to Rule 7.1 of the Local Rules for the District of Idaho**. Neither party shall file supplemental responses, replies, affidavits, or other filings not authorized by the Local Rules without prior leave of Court. No motion or memorandum, typed or handwritten, shall exceed 20 pages in length.**

**Alternative Dispute Resolution (ADR)**. Should Plaintiff and any Defendant wish to attend a settlement conference, they should file a stipulation to attend settlement conference, and the case shall then be referred to the Court's ADR Director.

SO ORDERED.

DATED: December 4, 2014

Edward J. Lodge
United States District Judge

**MEMORANDUM DECISION AND ORDER - 13**